UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| TONYA S. G.,[1]<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration,<br><br>    Defendant. | CIV. 17-5021-JLV<br><br>ORDER |

**INTRODUCTION**

  Plaintiff Tonya G. filed a complaint appealing the final decision of Nancy A. Berryhill, the Acting Secretary of the Social Security Administration, finding her not disabled. (Docket 1). The Commissioner denies plaintiff is entitled to benefits. (Docket 10). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 12). The parties filed their JSMF. (Docket 14). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner is granted.

---

[1]The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders. For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person mentioned in the opinion. This includes the names of non-governmental parties appearing in case captions.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 14) is incorporated by reference. Further recitation of salient facts is incorporated in the discussion section of this order. On March 6, 2013, plaintiff Tonya G. applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33, 1381-83f (2006), respectively. Id. ¶ 1. Tonya G. alleged an onset of disability date of August 15, 2012. Id.

On February 3, 2016, the administrative law judge ("ALJ") issued a decision finding Tonya G. was not disabled. Id. ¶ 15; see also Administrative Record at pp. 24-36 (hereinafter "AR at p. ___"). The Appeals Council denied Tonya G.'s request for review and affirmed the ALJ's decision. (Docket 14 ¶ 19). The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. It is from this decision which Tonya G. timely appeals.

The issue before the court is whether the ALJ's decision of February 3, 2016, that Tonya G. "has not been under a disability within the meaning of the Social Security Act from January 6, 2013, through [February 3, 2016]" is supported by substantial evidence in the record as a whole. (AR at p. 25); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite

decision.'" Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to DI benefits under Title II or SSI benefits under Title XVI. 20 CFR §§ 404.1520(a) and 416.920(a).[2] If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment— one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

---

[2] The criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520. Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992). All further references will be to the regulations governing DI benefits, unless otherwise specifically indicated.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 24-36).

**STEP ONE**

At step one, the ALJ determined Tonya G. had "not [been] engaged in substantial gainful activity since January 6, 2013, the amended alleged onset date." Id. at p. 26 (bold omitted). Plaintiff objects to this finding. (Docket 17 at pp. 9-11).

In her application for benefits, Tonya G. alleged an onset of disability date of August 15, 2012. (Docket 14 ¶ 1). The SSA field office investigated Tonya G.'s work activities during the relevant time period. Id. ¶¶ 2-4. The field office filed a "Correction to POD"[3] verifying her alleged onset date of August 15, 2012, was confirmed as "POD 08/15/2012." Id. ¶ 4.

At the administrative hearing, the attorney[4] representing Tonya G. moved to "amend the alleged onset date to January 6, 2013, because it was after this date that [Tonya G.] had a knee scope and was working very limited hours part time and not reaching substantial gainful activity." Id. ¶ 12 (internal quotations and citation omitted). After a brief discussion about the significance of an alleged onset date, the ALJ suggested Tonya G. and her

---

[3]"POD" stands for "potential onset date."

[4]Present counsel did not represent Tonya G. at the administrative hearing.

attorney step away from the hearing and discuss the issue.  Id.  Upon their return to the hearing room, Tonya G. indicated she would use the 2013 date. Id.  "The ALJ stated, without establishing a factual basis, 'I find that to be a knowing decision . . . .' "  Id.

Tonya G. claims the ALJ accepted plaintiff's attorney's motion to "amend her onset date to January 6, 2013, without showing awareness of the SSA field office's analysis of [Tonya G.'s] work and potential onset date."  (Docket 17 at p. 10).  Plaintiff challenges the motion to amend because her attorney had just signed a representation notice on the date of the hearing and the attorney "gave the ALJ reason to doubt the adequacy of his representation."  Id.  Plaintiff identifies the following actions as supportive of her challenge:

> Not only did the attorney move to amend the onset date contrary to the field office's determination, he was retained on the day of hearing . . . revealed his unfamiliarity with the record (said vocational rehabilitation records were in a physiatry exhibit . . . although there was no voc rehab evidence), showed up with a stack of medical records that the ALJ did not have time to read . . . reported there were several months of medical records still to be submitted . . . , provided a lame excuse for not timely submitting these . . . , said he would submit the evidence within 30 days, and never submitted the evidence . . . .  Further, the attorney did not ask the vocational expert a single cross-examination question. . . . Finally, [the attorney] did not take advantage of any procedural options, beneficial to [Tonya G.], which the ALJ offered when he proferred [sic] Dr. Greg [S.'s] post hearing psychological consultative examination.

Id. at pp. 10-11 (referring Docket 14 ¶¶ 10-14).

Plaintiff argues "[i]t was the ALJ's responsibility to apply SSR 83-20 criteria to determine the potential onset date, irrespective of the

6

representative's uninformed request to change it." Id. at p. 11 (referencing Hansen v. Colvin, 4:12-cv-04208, Docket 23 (D.S.D., Feb 28, 2014) (unpublished) (citing Talanker v. Barnhart, 487 F. Supp. 2d 149, 155 (E.D.N.Y. 2007) (record inconclusive whether claimant knowingly consented to amended onset date) and Rohan v. Barnhart, 306 F. Supp. 2d 756, 766 (N.D. Ill. 2004) (citing SSR 83-20 for the proposition that "[t]he onset date is critical, and it is essential that the onset date be correctly established and supported by the evidence."); Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (ALJ's responsibility to develop the record fairly and fully is independent of claimant's burden to press his case)). Plaintiff contends the ALJ's "[f]ailure to comply with SSR 83-20 was harmful because it reduced the amount of [Tonya G.'s potential past-due benefits, increased the time before Medicare was potentially available, and eliminated consideration of absenteeism to support a closed period of disability from August 2012 to August 2013 . . . ." Id.

The Commissioner argues SSR 83-20 does not require the ALJ to do more than was done in Tonya G.'s case. (Docket 18 at p. 4). "Because the ALJ found Plaintiff was not disabled under the Act," the Commissioner contends "there is no need to determine when disability began and SSR 83-20 did not apply." Id. Defendant submits "Plaintiff may now disagree with her prior counsel's advice and regret her own explicit request to amend her alleged onset date, but she cannot show any reversible error by the ALJ in granting her request." Id. at p. 5.

7

The policy statement of SSR 83-20 reads:

The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83-20, Onset of Disability, 1983 WL 31249 at *1. As the introduction of SSR 83-20 explains, in DIB cases "insurance benefits . . . may be paid for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received." Id. For SSI claims, "there is no retroactivity of payment. Supplemental security income . . . payments are prorated for the first month for which eligibility is established after application and after a period of ineligibility." Id.

SSR 83-20 goes on to declare that for "determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. . . . However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." Id., 1983 WL 31249 at *3. In SSI cases, "[o]nset will be established as of the date of filing provided the individual was disabled on that date. Therefore, specific medical evidence of the exact onset date need not

8

generally be obtained prior to the application date since there is no retroactivity of payment . . . ." Id., 1983 WL 31249 at *7.

Plaintiff points to very little evidence in the record to support her claim the ALJ should have used the earlier date of August 15, 2012, as the onset date of disability. See Docket 17 at pp. 9-10. Tonya G. had right knee arthroscopy on January 6, 2013. (Docket 14 ¶ 105). It was after this procedure that Tonya G.'s health condition appears to have worsened. Compare Docket 14 ¶¶ 28-104 with ¶¶ 105-183.

The ALJ's acceptance of January 6, 2013, as plaintiff's onset date of disability is a decision . . . supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801. Both Tonya G. and her attorney agreed this date was an appropriate date for use in her case. Whether the ALJ "failed to consider the evidence that [Tonya G.'s] work was below SGA since August 15, 2012," as alleged by plaintiff does not overcome the court's finding the ALJ's decision is supported by substantial evidence. (Docket 17 at p. 10).

Plaintiff's objection to the ALJ's step one finding is overruled.

**STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)." 20 CFR § 416.920(a)(4)(ii). "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). A severe impairment is

9

defined as one which significantly limits a physical or mental ability to do basic work activities. 20 CFR § 416.905. An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." Id. (citation omitted). Additionally, the impairment must have lasted at least twelve months or be expected to result in death. See 20 CFR § 416.905.

The ALJ identified Tonya G. suffered from the following severe impairments: "spine disorder [and] dysfunction of the major joints . . . ." (AR at p. 27). Plaintiff objects to the ALJ describing her impairments in this manner. (Docket 17 at p. 13). She contends the "finding of 'spine disorder' inadequately describe[s] [her] cervical spine abnormalities with chronic radiculopathy affecting her left upper extremity, identified by EMG/NCV studies, which the ALJ acknowledged but dismissed because the studies did not show 'evidence of ongoing or active denervation.' " Id. (referencing AR at p. 31).

Additionally, plaintiff argues the ALJ failed to properly consider the psychological evaluation findings of Dr. S. and failed to find her IQ of 77 and the findings of Dr. H. that Tonja G. suffers from an "adjustment disorder and 'pain disorder associated with both psychological factors and a general medical condition," as severe. Id. at pp. 14-15.

Concerning Tonya G.'s cervical spine abnormalities with chronic radiculopathy, plaintiff argues "EMG/NCV documentation of 'chronic cervical radiculopathy' explained pain and weakness limiting use of [G.'s] left upper extremity."  Id. at p. 13.  Plaintiff submits the ALJ's declaration that "ongoing or active denervation" must be found before these conditions can be considered as severe is "a medical opinion he was not qualified to make."  Id. (referencing Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir. 2003)).  Rather, Tonya G. believes the ALJ should have considered the opinions of Dr. S., Dr. Timothy F. and Dr. L. and find her left arm and shoulder pain were severe.  Id. at p. 14.

Plaintiff argues the ALJ improperly accepted the MRI report of Dr. William Z. finding the 2013 MRI was normal even though Dr. Timothy F. found in a 2012 MRI "left paracentral disc protrusion at C5-C6 which could be causing some inpingement [sic] on the left C6 ventral nerve root and mild effacement of the cord," and Dr. L. "diagnosed left C5-6 disc protrusion with left C6 radicular pain."  Id. at pp. 13-14.  "[F]ailure to properly assess the competing opinions," Tonya G. believes "was error."  Id. at p. 14.  Tonya G. argues "the ALJ [also] failed to review abnormal cervical spine MRIs reported in February 2014 . . . September 2015 . . . and February 2016 . . . ."  Id. at p. 14 (referencing Docket 14 ¶¶ 184, 206-07 and 223).

Regarding Dr. Greg S.'s finding on Tonya G.'s IQ score, plaintiff argues "[t]he ALJ failed to identify any evidence supporting his conclusion that a 'largely normal mental status examination' could contradict Dr. [S.'s]

11

assessment based upon WAIS IV[5] test results." Id. at p. 15.  Plaintiff submits an IQ of 77 is " 'severe' as a matter of law." Id. (citing Hunt v. Massanari, 250 F.3d 622, 625-26 (8th Cir. 2001) (internal citations omitted); also referencing Nicola v. Astrue, 480 F.3d 885 (8th Cir. 2007)).

Plaintiff also argues "the ALJ misstated Dr. [H.'s] consistent diagnosis of adjustment disorder and 'pain disorder associated with both psychological factors and a general medical condition.' " Id. (referencing AR at p. 27 ¶ 5 and Docket 14 ¶¶ 137 & 146).  She contends "[t]he ALJ re-cast Dr. [H.'s] diagnosis as adjustment disorder and 'pain disorder' omitting the physical and psychological connections expressly stated in the actual diagnosis." Id. at pp. 15-16 (referencing AR at p. 27 and Docket 14 p. 98).  Tonya G. asserts the ALJ's decision to give little weight to the diagnosis of Dr. H. fails "to identify evidence that 'largely normal mental status examinations' contradict the existence of physical and psychological pain." Id. at p. 16.

Plaintiff argues the errors at step two are "not harmless" as they "undermined the proper application of SSR 16-3p." Id.  She contends the ALJ's "[f]ailure to identify severe impairments and their combined effect

---

[5]"The Wechsler Adult Intelligence Scale-Fourth Edition is used 'to assess cognitive ability for adults.  This instrument aids in examining the relationship between intellectual functional and memory.' " Knight v. Berryhill, CIV. 16-5041, Docket 25-1 at p. 5 (D.S.D. February 28, 2018) (referencing www.statisticssolutions.com/wechsler-adult-intelligence-scale-fourth-editionwais-iv).

negatively influenced the credibility finding and formulation of 'the most important issue, "residual functional capacity." ' " Id. (citing McCoy v. Schweiker, 683 F.2d 1138, 1146 (8th Cir. 1982) (*en banc*)) (*abrogated on other grounds by* Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000)).

In response, the Commissioner contends any error on the part of the ALJ is harmless because at least one severe impairment was identified. (Docket 18 at p. 5). Because the ALJ did not deny benefits at step two and proceeded to step three, the Commissioner asks the court to adopt decisions from other Circuit Courts and finds any error is "not reversible error." Id. at p. 6 (referencing Carpenter v. Astrue, 537 F.3d 1264, 1265-66 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("any [step two] error was harmless . . . . [because] the ALJ extensively discussed Lewis's bursitis at Step 4 of the analysis . . . ."); Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.).

13

In her reply brief, plaintiff argues the "Commissioner does not seek to rebut or avoid the legal standard declared in Hunt, . . . . 250 F.3d . . . [at] 624 . . . that borderline intellectual functioning, defined as an IQ between 71 and 84, is 'severe' as a matter of law. Commissioner's apparent reluctance to argue the point is understandable where no reasonable argument is possible, given the ALJ's account of the evidence—'a valid full-scale IQ score of 77'—without identifying contradictory medical opinion to dismiss the IQ evidence." (Docket 19 at p. 5).

The court does not accept the Commissioner's argument that any error at step two is irrelevant because the ALJ proceeded to the next step. An ALJ's failure to recognize a severe impairment at step two may affect the remainder of the ALJ's analysis because the Social Security regulations require the ALJ to consider any severe impairments found at step two throughout the remainder of the five-step evaluation process. See 20 CFR § 404.1520(a)(4).

The United States Court of Appeals for the Eighth Circuit rejected the argument of the Commissioner in Nicola, 480 F.3d 885. In that case, the ALJ failed to consider the claimant's borderline intellectual functioning as a severe impairment. Id. at 887. The Commissioner conceded the condition should have been found to be a severe impairment, but made the same argument of harmless error. Id. The Nicola court "reject[ed] the Commissioner's argument of harmless error." Id. Based on that finding, the court reversed and remanded the case to the Commissioner. Id.

This court also found an error at step two is not harmless. "Failure to identify all of a claimant's severe impairments impacts not only the ALJ's credibility findings, consideration of activities of daily living, but most importantly, a claimant's residual functional capacity . . . ." Thurston v. Colvin, CIV. 15-5024, 2016 WL 5400359, at *5 (D.S.D. Sept. 27, 2016). If "[t]he ALJ erred as a matter of law at step two of the sequential evaluation process [,] [t]he remainder of the ALJ's decision is similarly defective." Lays Hard v. Colvin, CIV. 14-5063, 2016 WL 951508, at *8 (D.S.D. Mar. 9, 2016). If a claimant's severe impairments must be revisited, "the subsequent steps in the evaluation process must be reanalyzed." Id. The court must address plaintiff's step two challenges.

The ALJ acknowledged the testing performed by Dr. Greg S. resulted in "a valid full-scale IQ score of 77." (AR at p. 27). Notwithstanding this valid test result, the ALJ gave the opinion of Dr. Greg S. "little weight, as the evidence does not support a finding of more than a minimal impairment in any mental limitations. Further, this opinion is inconsistent with the objective examination of [Dr. Greg S.] showing a largely normal mental status examination." Id.

To place the ALJ's discussion in context, a review of all of Dr. Greg S.'s findings is required. Dr. Greg S. found:

> [Tonya G.] attempted all problems presented in the course of testing with the WAIS-IV and WMS-IV[6]. . . . She "usually was able to maintain concentration" but was "distracted by her pain level. This seemed to increase throughout the test administration. At one point, she was unable to continue.". . . After she had completed six of the ten subtests of the WMS-IV, "[f]urther administration was deemed inadvisable, as Tonya's pain had become a significant distraction from her performance."

Docket 14 ¶ 231 (internal references omitted). Dr. Greg S. found that she "was however, able to complete the WAIS-IV." Id. ¶ 232. On the WAIS-IV, he reported Tonya G.

> Had significantly low scores in her Verbal Comprehension Index (70, or 2nd percentile), and Processing Speed Index (81, or 10th percentile). . . . Her FSIQ was 77, 6th percentile, "borderline range." Subtest scores in Verbal Comprehension were significantly lower (2nd to 5th percentiles) than in Perceptual Reasoning (16th to 25th percentiles) and Working Memory (16th to 25th percentiles). . . . Processing Speed scores were 5th percentile in Symbol Search and 25th percentile in Coding. . . . Dr. [S.] said the Verbal Comprehension Index score of 70 "indicated moderate impairment in vocabulary, factual knowledge, and verbal abstract reasoning."

Id.

Dr. Greg S. also conducted a mental status examination. Id. ¶ 233. His findings were as follows:

> "Tonya acknowledges episodes of anger and sadness, and tears were evident several times during the course of evaluation, triggered by pain.". . . Mental status examination was essentially normal; however, there was evidence of moderate impairment in verbal comprehension, retention, verbal reasoning, verbal expressive ability. . . . There was evidence of moderate impairment in attention, possibly related to pain.

---

[6]"The Wechsler Memory Scale-Fourth Edition 'measures a client's ability to learn and remember information presented both verbally and visually.'" Knight v. Berryhill, CIV. 16-5041, Docket 25-1 at p. 5 (D.S.D. February 28, 2018) (referencing https://www.helloq.com/tests/test-library/wms-iv.html).

Id. Dr. Greg S.'s "DSM-V diagnosis was 315.89 Language Disorder and 309.0 Adjustment Disorder with Depressed Mood. Prognosis was fair." Id. ¶ 234.

The ALJ decided to give the findings and opinion of Dr. Greg S. little weight because of a "largely normal mental status examination." (AR at p. 27). The ALJ's analysis misstated and mischaracterized Dr. Greg S.'s opinion. While Dr. Greg S. found Tonya G's mental status examine "essentially normal," he noted several significant deviations from normal: "however, there was evidence of moderate impairment in verbal comprehension, retention, verbal reasoning, verbal expressive ability. . . . There was evidence of moderate impairment in attention, possibly related to pain." (Docket 14 ¶ 233). The ALJ's decision is not based on substantial evidence and is not supported by good reason. Guilliams, 393 F.3d at 801.

Regardless of the results of the mental status examination, Tonya G.'s test scores were found to be valid by Dr. Greg S. and recognized as valid by the ALJ.[7] A full-scale IQ 77 is recognized as constituting borderline intellectual functioning. Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999) ("Borderline intellectual functioning describes individuals with IQ between 71 and 84."). "[B]orderline intellectual functioning should be considered a severe impairment." Hunt, 250 F.3d at 625 (referencing Lucy v. Chater, 113 F.3d

---

[7]The Commissioner failed to address these findings or plaintiff's specific argument on the topic. See Docket 18.

905, 908 (8th Cir.1997) ("We have previously concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment."); Nicola, 480 F.3d at 887 (same).

The failure of the ALJ to find Tonya G.'s borderline intellectual functioning as a severe impairment constitutes an error as a matter of law. Smith, 982 F.2d at 311; Nicola, 480 F.3d at 887; Hunt, 250 F.3d at 625; Lucy, 113 F.3d at 908.

Regarding plaintiff's spinal abnormalities with chronic cervical radiculopathy, the ALJ acknowledged but discounted the findings of the EMG, because they were "without any evidence of ongoing or active denervation." (AR at p. 31). The ALJ cites no statute, regulation or medical authority which requires such a finding before chronic cervical radiculopathy can be considered independently, or in conjunction with chronic pain, as a severe impairment. The ALJ is not a medical expert and is not qualified to express a medical opinion. The action of the ALJ "fairly detracts" from the finding on this issue. Reed, 399 F.3d at 920. Whether plaintiff's cervical condition constitutes a severe impairment must be resolved based on a proper analysis of the record before an ALJ on remand.

Because "[t]he ALJ erred as a matter of law at step two of the sequential evaluation process [,] [t]he remainder of the ALJ's decision is similarly defective." Lays Hard, 2016 WL 951508, at *8. "With [these] central and potentially dispositive issue[s] unexplored by the ALJ, [the court has] no

confidence in the reliability of the RFC upon which the ALJ based his decision."
Id. (citing Snead, 360 F.3d at 839).  "The evidence not appropriately considered by the ALJ detracts from the decision to deny disability benefits." Id. (citing Reed, 399 F.3d at 920).

Because of the court's decision at step two, it is not necessary to resolve Tonya G.'s other arguments.  The court trusts on remand the Commissioner will direct an ALJ to conduct a proceeding consistent with the requirements of the five-step sequential evaluation process for determining whether an individual is disabled.  20 CFR § 404.1520(a)(4).

**ORDER**

Based on the above analysis, the court finds the matter should be remanded for further proceedings consistent with this order.  Accordingly, it is

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 15) is granted.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with the decision set out above.

Dated September 17, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE